This case involves a dispute over the payment of approximately $2,000 of medical expenses. The plaintiff, Lonnie R. *Page 599 
Glenn, appeals from a summary judgment in favor of defendants Vulcan Materials Company ("Vulcan") and William A. Miller. We affirm in part, reverse in part, and remand.
As a result of injuries sustained by Glenn on August 9, 1979, while working for Vulcan, Glenn and Vulcan entered into a settlement agreement, which the trial court approved on March 9, 1983. That agreement obligated Vulcan to pay Glenn's future medical expenses in accordance with the Workmen's Compensation Act (the "Act").[1] The applicable provision of the Act is § 25-5-77(a), which, in pertinent part, provides:
 "[T]he employer shall pay the actual cost of reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies. . . . The total liability of the employer shall be limited to such charges as prevail for similar treatment in the community where the injured employee resides. . . . All cases of dispute as to the necessity and value of such services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation." (Emphasis added.)
The record shows that, prior to the settlement agreement, Vulcan had paid $76,572.73 to Glenn's hospital, Baptist Medical Center — Princeton, for medical expenses arising out of Glenn's on-the-job injury. The record further indicates that, since the settlement agreement, Vulcan has expended an additional $11,806.15 to cover Glenn's medical bills at Princeton. Thus, Vulcan has paid a total of $88,378.88 of Glenn's medical bills since his injury in 1979. This dispute arises from Vulcan's refusal to pay approximately $2,000, which constituted a portion of two medical bills totaling $16,189.80, on the ground that the refused amount represented excessive charges for certain drugs and supplies. Vulcan based its refusal to pay on an evaluation by PCC/Drug Data System, Inc. ("PCC"), which it had hired to audit its employees' medical expenses. In 1982, PCC had advised Vulcan that two of the hospital's bills contained excessive charges for certain drugs and supplies and that those charges should not be paid. The record shows that Vulcan informed Princeton of its refusal to pay those charges deemed by PCC to be unreasonable. Consequently, on March 17, 1984, Princeton sued Glenn to recover the unpaid amount and, in turn, on December 3, 1984, Glenn filed a complaint against Vulcan and Miller,[2] seeking damages for outrageous conduct and bad faith in Vulcan's refusal to pay the total charges submitted by Princeton. Glenn predicated his outrage claim on Vulcan's alleged legal obligation "to pay all future medical bills incurred by [him] relative to the on-the-job injury" and on Vulcan's alleged intentional refusal to pay the approximately $2,000 in hospital bills, with knowledge that such a refusal would subject him to a collection suit and cause him to suffer severe emotional distress. Glenn further alleged that Vulcan's decision to refuse payment was made maliciously and without legal justification and that Vulcan is therefore liable for damages in tort for "bad faith refusal to pay medical benefits." In the first of two amendments to Glenn's complaint, Lonnie Glenn's wife, Robin Glenn, was joined as a party plaintiff, claiming damages as a proximate result of Vulcan's alleged outrageous conduct and bad faith refusal to pay. In his second amendment, Glenn alleged that Vulcan's refusal to pay pursuant to the settlement agreement constituted a breach of contract under § 25-5-77(a), supra, and that Vulcan had fraudulently induced him to enter into the settlement agreement by misrepresenting that it would pay his future medical expenses. On November 6, 1985, the trial court entered a partial summary judgment in favor of Vulcan and Miller, dismissing all of Robin Glenn's claims[3] and Lonnie Glenn's claim based on bad faith. On February 5, *Page 600 
1986, with respect to Princeton's suit against Glenn for the unpaid charges, the trial court entered a default judgment against Glenn.[4] On May 21, 1987, the trial court granted summary judgment in favor of Vulcan and Miller as to Glenn's remaining claims. Hence, this appeal.
Summary judgment for a defendant is proper when there is no genuine issue of material fact and the defendant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. If there is any evidence of every element of a cause of action, then, unless the defendant has conclusively established a defense, summary judgment is inappropriate. In determining whether there is any evidence to support every element of a cause of action in this case, this Court must review the record in a light most favorable to Glenn and resolve all reasonable doubts against the defendants. Wilson v.Brown, 496 So.2d 756 (Ala. 1986).
Having so reviewed the record, we hold that Vulcan was not entitled to a judgment as a matter of law as to Glenn's claim for breach of contract. Pursuant to the settlement agreement and the Act, Vulcan was obligated to pay the cost of Glenn's reasonably necessary future medical expenses. As the movant, Vulcan bore the burden of showing the unreasonableness of the hospital's charges in question. Vulcan supported its motion primarily with Miller's deposition. Miller testified that he had hired PCC to audit two of Glenn's hospital bills in order to verify the reasonableness of the charges for drugs and supplies; that thereafter PCC sent Vulcan and Princeton a computerized audit report listing all the hospital charges and showing them in relation to its recommended charges; and that, in accordance with PCC's audit, Miller paid PCC's recommended amount and disputed the remaining charges as being unreasonable. Miller based his testimony as to the reasonableness of the charges entirely on PCC's audits, which are unauthenticated documents and which contain hearsay evidence.
Rule 32, A.R.Civ.P., sets out the rules governing the use of depositions in court proceedings; and, accordingly, we should analyze Rule 56 (summary judgment) in relation to Rule 32. Rule 32(a) and (b), in pertinent part, respectively provide:
 "(a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof. . . .
". . .
 "(b) Objections to Admissibility.
Subject to the provisions of subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying."
Rule 32(d)(3) states:
 "(A) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time. *Page 601 
 "(B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.
 "(C) Objections to the form of written questions submitted under Rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other questions and within 5 days after service of the last questions authorized."
Dean Gamble summarizes Rule 32(b) as follows:
 "[A] party may object to a matter in a deposition introduced at trial [or at a hearing] even though he did not object at the taking of the deposition . . . if the objection is to a matter of substance and, had he made an objection at the taking of the deposition, the objectionableness could not have been cured." C. Gamble, McElroy's Alabama Evidence, § 426.01(4) (3d ed. 1977).
Both parties, in arguing for or against summary judgment, relied upon the deposition testimony of William Miller. At the time of Miller's deposition, the parties entered a stipulation that incorporated the provisions of Rule 32(b). According to this stipulation, the parties agreed that objections would not be necessary except as to the form of questions and that "counsel for the parties may make objections and assign grounds at the time of the trial, or at the time said deposition is offered in evidence." This is a binding agreement to which this Court will give full force and effect. McElroy's, § 426.01(4) (citingNational Union Fire Ins. Co. v. Weatherwax andGentry, 247 Ala. 143, 22 So.2d 733 (1945)). During the taking of the deposition, Miller testified that Vulcan refused payment of the charges in question on the ground that PCC had deemed them to be unreasonable and unsubstantiated. Miller presented copies of PCC's letters to Princeton and copies of PCC's computerized audits of Princeton's bills. Apparently relying on Rule 32(b) and the stipulation, Glenn's attorney did not object to Miller's testimony, which was clearly based on hearsay statements and unauthenticated documents. Miller's testimony involved matters of substance, not form, and an objection at that time would not have cured the defect.
At the summary judgment hearing, Glenn and Vulcan offered into evidence Miller's deposition and exhibits showing the results of PCC's audits. Neither party objected to the admissibility of these matters as evidence. Under Rule 32(a), both parties had the right to use Miller's deposition against the other as long as the portion used was admissible under the rules of evidence. Under Rule 32(b), the hearing was a proper time to interpose an objection. When a party against whom inadmissible evidence is offered fails to make a timely objection, he waives his right on appeal to claim as error the introduction of that evidence. McElroy's, § 426.01(1). Because Glenn failed to object to the admissibility of the PCC audits as evidence, we must view these documents as evidence that was properly considered by the trial court. See also, Perry v. Mobile County,533 So.2d 602 (Ala. 1988) (regarding affidavits introduced in support of motions for summary judgment). In support of their motion for summary judgment, Vulcan and Miller introduced evidence, to which no objection was interposed, showing that PCC had audited some of Glenn's medical bills from Princeton and had determined that certain charges were excessive. Vulcan and Miller met their burden.
Glenn introduced his deposition in opposition to the motion for summary judgment. Glenn testified that the medical charges were reasonable. This testimony was objectionable, since there was nothing showing that Glenn was qualified to testify as to the reasonableness of such charges. See Ala. Code 1975, § 12-21-114, and cases construing that section. However, there was no objection to Glenn's deposition testimony; therefore, it was sufficient to create a fact question as to the reasonableness of *Page 602 
the medical charges. Again, see Perry v. MobileCounty, supra (regarding affidavits introduced in opposition to motions for summary judgment). Summary judgment on Glenn's contract claim should not have been granted.
However, as to Glenn's claims for fraud, outrageous conduct, and bad faith refusal to pay, his evidence failed to raise a genuine issue of material fact. First, the exclusive remedy provisions of the Act bar Glenn's fraud and bad faith claims. Code 1975, § 25-5-52, -53; Moore v. LibertyMutual Insurance Co., 468 So.2d 122 (Ala. 1985);Waldon v. Hartford Insurance Group, 435 So.2d 1271
(Ala. 1983); Garvin v. Shewbart, 442 So.2d 80 (Ala. 1983). Second, the record does not support the conclusion that Vulcan committed conduct "so outrageous in character and so extreme in degree as to . . . be regarded as atrocious and utterly intolerable in a civilized society." AmericanRoad Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980); see, also, Garvin; Nabors v. St. Paul InsuranceCo., 489 So.2d 573 (Ala. 1986). This does not preclude, however, the application of the 10% penalty, ifappropriate, pursuant to Code 1975, § 25-5-59.
Furthermore, Ala. Code 1975, § 25-5-77(a), provides the procedure for adjudicating a dispute between the employer and the employee with respect to the reasonableness of medical expenses. Vulcan's refusal to pay the full amount as billed and its offer to defend Princeton's suit against Glenn for the disputed amount of hospital expenses cannot be deemed to be in compliance with the statutory scheme for adjudication. Indeed, we perceive Glenn's contract claim in the instant suit as falling within the purview of § 25-5-77(a) and upon remand it should be so treated.
For the foregoing reasons, the judgment of the trial court is affirmed as to the fraud, outrageous conduct, and bad faith claims, but is reversed as to the contract claim, and this case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] The record indicates that Vulcan is a self-insured employer under Code 1975, § 25-5-8(b).
[2] Miller was claims manager for Vulcan and handled Glenn's claims for medical benefits.
[3] Robin Glenn is not a party to this appeal.
[4] The attorney for Glenn refused to permit Vulcan to defend the lawsuit against Glenn. In Vulcan's letter of July 27, 1984, to Glenn's then-attorney, the following appeared:
 "As I indicated to you and as you have outlined in your letter, Vulcan Materials Company is willing to defend Mr. Glenn and pay all costs associated with that defense for any lawsuit filed in conjunction with our disagreement with the hospitals that treated Mr. Glenn and their overcharges. . . . Let me also add that failure to tender defense of this lawsuit to Vulcan does not provide us with the opportunity to adequately defend these charges lodged against Mr. Glenn, assuming this lawsuit results from his on the job injury and hospital treatment resulting therefrom. As a result, Vulcan will not be bound by any adverse judgment against Mr. Glenn without the opportunity to properly defend this lawsuit."
Glenn's attorney, by letter dated August 2, 1984, replied:
 "I did not know that you were now an insurance company and defended lawsuits."