587 So.2d 980 (1991)
Kermit C. McKELVY
v.
Arthur Bailey DARNELL.
1900273.
Supreme Court of Alabama.
September 13, 1991.
*981 Brent M. Craig and Harry Montgomery, Moulton, and Billy C. Burney, Decatur, for appellant.
J. Flynn Tubb of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellee.
MADDOX, Justice.
This appeal involves two issues: (1) Whether a party, by failing to object to a question asked of a witness during a deposition, can nevertheless object to the question when the deposition is being read into evidence at the trial, and (2) whether the trial judge erred in permitting a state trooper to testify as an expert witness and give his opinion as to the speed of a motor vehicle involved in an accident.
The plaintiff, Kermit McKelvy, sued the defendant, Arthur Bailey Darnell, claiming damages for injuries he allegedly suffered in an automobile accident that occurred on Highway 33 in Lawrence County. The testimony of the parties was conflicting. McKelvy, a 79-year-old man, testified that he was traveling south on Highway 33 from Courtland to Moulton and that as he approached an engine shop beside the highway *982 he reduced his speed to about 45 miles per hour. McKelvy claimed that Darnell, who was traveling north, made a left turn in front of him without giving any signal. Darnell claimed that the accident happened when he was turning into a store parking lot. He claimed that he slowed down, looked left into the parking lot, looked straight to the road in front of him, and turned on his left-turn signal, and that when he was about half-way in his turn he saw McKelvy's vehicle three or four car lengths away. The right front fender of McKelvy's vehicle struck the back fenderwall of Darnell's truck.
A state trooper who investigated the accident estimated that McKelvy was driving 60 miles per hour at the time of impact.
McKelvy testified that he suffered severe injuries as a result of the accident. He acknowledged that he had been in prior accidents, in which he had suffered chest, back, and neck injuries. The accident occurred on December 16, 1988. The most recent accident prior to this one had occurred in 1981.
The trial was before a jury, which returned a general verdict in favor of the defendant, Darnell.

Waiver of Right to Object to Evidence
The first issue we discuss is whether, during the reading of deposition testimony of the plaintiff's treating physician, Darnell could object to certain questions asked, although he had not objected to those questions while the deposition was being taken.
The plaintiff, McKelvy, had taken a deposition of his treating physician, Dr. Willard Irwin, and wanted to introduce it into evidence at the trial. At the time the deposition was taken, McKelvy and Darnell had entered into a stipulation that provided, in part, "that it shall not be necessary for any objections to be made by counsel to any questions, except as to form of leading questions, and that counsel for the parties may make objections and assign grounds at the time of trial, or at the time said deposition is offered in evidence, or prior thereto." (Emphasis added.)[1]
During the trial, McKelvy offered the deposition testimony of Dr. Irwin; Darnell's counsel objected to the following questions, on the basic ground that Dr. Irwin did not base his opinion testimony upon "a reasonable degree of medical certainty":
"Again, do you think on this occasion that this condition was still being aggravated or incited still [sic] due to the wreck?"
"Do you have an opinion that [sic] would have caused those [muscle spasms], if anything?"
"Can you in any way relate this condition, or the condition you observed at that time, to the automobile accident that occurred back in December or can you in *983 any way relate these physical conditions to that?"
The trial court sustained Darnell's objections to these questions, thereby excluding the doctor's answers, which would have been beneficial to McKelvy's case. McKelvy claims that the trial court erred in doing so, and argues that any objection Darnell had to the questions should have been made when the deposition was taken and that his failure to object at that time constituted a waiver of any objection.
Darnell argues, on the other hand, that the questions go far beyond mere form or technicality and go "to the very heart of [the] plaintiff's casecausation," and that he had not waived his right to object to the questions.
We agree with McKelvy that Darnell waived his right to object to the three questions by failing to object at the time the deposition was taken. Essentially, Darnell's objection was that McKelvy had not laid a proper predicate, a matter that could have been corrected if objection had been made at the deposition hearing. We agree with McKelvy that the questions were proper and that the trial judge should not have excluded the testimony, as we shall point out below.

There Was A Waiver of Right to Object at Trial
The record shows that the parties had stipulated that objections other than objections as "to form of [sic] leading questions" could be made at trial; such stipulations made during depositions are binding agreements and will be given full force and effect by this Court. C. Gamble, McElroy's Alabama Evidence § 426.01(4) (4th ed.1991) (citing National Union Fire Ins. Co. v. Weatherwax & Gentry, 247 Ala. 143, 22 So.2d 733 (1945)). This stipulation effectively incorporated the provisions of Rule 32(b), Ala.R.Civ.P., which provides:
"(b) Objections to Admissibility. Subject to the provisions of subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying."
Rule 32(d)(3)(B) provides:
"Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition."
Although we have been unable to find substantial Alabama authority discussing this Rule as it has been applied in the context presented on this appeal, we have determined that the general rule is "that an objection, although not made at the deposition examination, may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present or testifying." 4A J. Moore, Moore's Federal Practice, ¶ 32.09 (2d ed. 1990), 32-44. Objections based on grounds that might have been obviated or removed if presented at the deposition examination, e.g., that the questions are leading, are waived unless the objections are made at that time. Id.
Dean Gamble, in his treatise, McElroy's Alabama Evidence, summarizes the provisions of Rule 32(b) as follows:
"These provisions, taken together, result in the following rules. First, a party may object to matter in a deposition introduced at trial even though he did not object at the taking of the deposition. This is only true, however, if the objection is to a matter of substance and, had an objection been lodged at the taking of the deposition, the objectionableness could not have been cured."
McElroy's Alabama Evidence § 426.01(4) (4th ed. 1991).
The reasons Darnell gave for objecting to the deposition questions were based on his claim that McKelvy had not laid a proper foundation for the questions. This problem could have been obviated at the *984 time the deposition was taken; therefore, Darnell should have objected at that time. See Nutterville v. McLam, 84 Idaho 36, 367 P.2d 576 (1961). The rule requires that, if a timely objection would enable the questioner to remedy the problem so that the same testimony could be received in accordance with law, the objection must be made at the time the deposition is taken. See Jordan v. Medley, 711 F.2d 211 (D.C.Cir.1983). Failure to object at that time waives the party's right to object. Therefore, Darnell was not entitled to object to the testimony for the first time at trial.
Although the questions were perhaps not in the best form, they were proper questions, and the trial court erred in sustaining Darnell's objection to them.
Darnell argues that even if the trial court erred, the error was harmless. Rule 45, A.R.App.P.
The record does show that at another point in his deposition testimony, Dr. Irwin stated that, in his opinion, the pains and spasms McKelvy suffered in his neck, back, chest, and knee were "due to the car wreck." Dr. Irwin testified:
"Q. To rephrase that question, Dr. [Irwin], what was this treatment administeredwhat condition was it administered to treat?
"A. The spasm and pain in this neck, spasm of the muscles and pain in his neck, back, and in the back of his chest and knee.
"Q. Do you have an opinion what would have caused those, if anything?
"A. Yeah, I think it was due to the car wreck."
This testimony was read to the jury, without objection.
Darnell also claims that a general reading of the record also indicates that there was a dispute as to whether the accident was the proximate cause of McKelvy's injuries. Darnell claimed that he was properly turning into a store parking lot, and there was testimony by an investigating state trooper that the McKelvy vehicle was traveling at 60 miles per hour at the time of impact. Darnell states that the jury returned a general verdict in his favor and, because of this and based on the facts in the record, that this Court should apply the principle of law stated in Perry v. Seaboard Coastline R.R., 527 So.2d 696 (Ala. 1988).[2] In Perry, the Court held that "[b]ecause the jury returned a general verdict in favor of the defendant, and it was undisputed that the plaintiff incurred some damages, the only permissible conclusion [was] that the jury absolved the defendant from any liability." 527 So.2d at 698.
Based on all of the above, we cannot say that the trial court's exclusion of the evidencethrough sustaining the objectionsdid not probably prejudice McKelvy's right to a fair trial. Therefore, we decline to apply the "harmless error" rule to the facts of this case. The error requires that we reverse and remand the cause for a new trial.

No Error for State Trooper to Testify as an Expert
McKelvy further asserts that the trial court erred by allowing a state trooper who had been employed as a trooper for only approximately 10 months, to state his opinion about the speed of the automobile based on the skid marks and other evidence he observed at the scene of the wreck. The trooper had testified that, in his opinion, McKelvy was traveling at 60 miles per hour at the time of the accident. Because a new trial is necessary, we need not decide whether the trial court erred in allowing the trooper to testify as an expert, but because the question may arise in another trial, we decide the issue.
McKelvy had objected to the trooper's testimony on the ground that the trooper was not properly qualified as an expert to give an opinion as to the speed of *985 the car at the time of the collision. The trial court overruled the objection. We have examined the record to determine whether the trial judge abused his discretion in permitting the trooper to testify as an expert, and we find no error to reverse on this ground. In Alabama, the rule seems to be clear that opinion testimony is proper, assuming the witness is determined to be qualified, and assuming that the witness details the facts upon which the witness's conclusion is based. Dyer v. Traeger, 357 So.2d 328 (Ala.1978); see, also, Brown v. AAA Wood Products, Inc., 380 So.2d 784 (Ala.1980) (city police officer allowed to testify about the point of impact); Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972) (an expert may state an opinion as to the speed of a vehicle based on skid marks prior to impact and at the point of impact); cf. Phillips v. Emmons, 514 So.2d 1369 (Ala.1987) (expert could not give opinion testimony based on facts not in evidence). The question of whether a witness is qualified to render an expert opinion is traditionally left to the sound discretion of the trial court, and the decision of the trial court will not be disturbed on appeal unless this Court finds that the trial court abused its discretion. Baker v. Merry-Go-Round Roller Rink, Inc., 537 So.2d 1 (Ala.1988); Bell v. Hart, 516 So.2d 562 (Ala.1987); Cook v. Cook, 396 So.2d 1037 (Ala.1981); and Meadows v. Coca-Cola Bottling, Inc., 392 So.2d 825 (Ala. 1981).
Here, the state trooper testified (1) that he was the officer who investigated the McKelvy-Darnell accident, (2) that he had investigated approximately 100 accidents prior to investigating this accident, (3) that he had undergone 24 weeks of training at the Alabama Criminal Justice Center and had spent several months on accident investigation, (4) that he had ridden with different state troopers for approximately 14 weeks prior to getting his own patrol car and that during those 14 weeks he had assisted in accident investigations, (5) that upon arriving at the accident scene he identified and noted the location of the damaged vehicles, (6) that he identified the type of vehicles involved in the accident, (7) that he examined the direction the vehicles were pointing following the accident, (8) that the distance between the vehicles was 150 feet, (9) that he observed the damage to each vehicle, (10) that he identified where the vehicles had collided, based on the physical evidence he observed on or about the highway, (11) that there were skid marks headed in a southerly direction leading to the point of impact, and (12) that the skid marks were 147 feet long.
Based on this testimony, we cannot hold that the trial court abused its discretion in holding that the state trooper was qualified as an expert to testify regarding his opinion as to the speed of McKelvy's automobile at the time of the accident.
On the other hand, we conclude that McKelvy has shown that the judgment of the trial court should be reversed and the cause remanded for a new trial because of the exclusion of the deposition testimony of McKelvy's doctor; therefore, the judgment of the trial court, based upon the jury verdict in favor of the defendant, is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL and KENNEDY, JJ., concur.
SHORES, ADAMS and INGRAM, JJ., concur in part; dissent in part.
INGRAM, Justice (concurring in part; dissenting in part).
I concur in that portion of the opinion regarding the defendant's failure to object to questions asked during the deposition. Consequently, I agree that the judgment is due to be reversed and the cause remanded. However, I dissent from that portion of the majority's opinion approving the expert opinion evidence of the state trooper that was allowed by the trial court.
While it is true that a properly qualified expert may testify as to the estimated speed of a vehicle, Glaze v. Tennyson, 352 So.2d 1335 (Ala.1977), it must first be shown that he is in fact qualified as an expert on the subject. Annot., Opinion Testimony as to Speed of Motor Vehicle *986 Based on Skid Marks and Other Facts, 29 A.L.R.3d 248 (1970). Alabama law is settled that law enforcement officers, such as policemen or state troopers, may be considered experts in this area if they meet certain other qualifications. Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716 (1967); Stanley v. Hayes, 276 Ala. 532, 165 So.2d 84 (1964). Therefore, the question presently before the court is whether, considering the totality of the circumstances, the state trooper was qualified on the subject of determining speed.
After a review of the applicable law, I am unable to determine that a standard has been established for determining whether a law enforcement officer is qualified to testify as an expert in the area of vehicular speed. See, Glaze v. Tennyson, supra; Rosen v. Lawson, supra; Stanley v. Hayes, supra; Campbell v. Barlow, 274 Ala. 627, 150 So.2d 359 (1962); Jowers v. Dauphin, 273 Ala. 567, 143 So.2d 167 (1962); Johnson v. Battles, 255 Ala. 624, 52 So.2d 702 (1951).
In Glaze v. Tennyson, a deputy of the Jefferson County Sheriff's Department was allowed to testify as an expert as to the speed of the vehicle in question. The majority opinion stated:
"Here, that evidence shows that [the deputy] was indeed properly qualified to testify as an expert. Or, putting it differently, because abundant evidence was presented in support of [the deputy's] credentials, as an `expert,' we cannot say that the trial court abused its discretion in admitting such evidence."
352 So.2d at 1337. The majority opinion in that case did not cite the evidence presented; however, in a special concurrence, Justice Jones noted that the deputy "held a degree from Jefferson State College in Applied Sciences, with `police studies,' graduated from the police academy and had investigated over 300 wrecks," and stated that "his formal training and experience in the restructuring of accidents, including the estimation of vehicular speed from the totality of the circumstances, amply qualified him as an expert to express his opinion as to the speed of Glaze's car immediately before the wreck." Glaze, 352 So.2d at 1339. (Emphasis supplied.)
Further, in Stanley v. Hayes, 276 Ala. 532, 539, 165 So.2d 84, 89 (1964), this Court stated:
"Frank Osburn, a witness for plaintiff, testified that he was at the time Assistant Chief of Police of Foley, and had served as police officer for sixteen years. We will not detail the training and experience which the witness testified he had had with respect to investigating automobile accidents, but it suffices to say that the training he stated he had received, together with his experience, was in our opinion ample to qualify him as an expert on the subject of such accidents and details relating thereto, including speed of automobiles involved in collisions as shown by skid marks and kindred physical signs."
(Emphasis supplied.)
However, in Johnson v. Battles, 255 Ala. 624, 52 So.2d 702 (1951), a highway patrolman was not allowed to testify as an expert because the only evidence as to his qualifications was that he had been a member of the highway patrol for five and one-half years and during that time had investigated many automobile accidents.
As noted above, I have not been able to determine exactly what entitles a law enforcement officer to be considered an expert qualified to give opinion testimony concerning the speed of vehicles. Nevertheless, it would appear that just being a law enforcement officer, alone, certainly would not entitle a witness to be considered an expert. Rather, it would appear that the officer would need to have some type of special training and substantial experience in the reconstruction of accidents, where the question of vehicular speed is one requiring opinion evidence. See, Glaze v. Tennyson, supra; Stanley v. Hayes, supra.
I acknowledge that traditionally this determination is left to the sound discretion of the trial court. Baker v. Merry-Go-Round Roller Rink, Inc., 537 So.2d 1 (Ala. 1988). However, in this case, after a review of the state trooper's testimony concerning *987 his training and experience, I would hold that the trial court abused its discretion in allowing the trooper's opinion testimony. It is my opinion that the state trooper in this case was not qualified as an expert so as to be entitled to give his opinion as to the speed of the vehicle. He lacked the requisite training and experience necessary to qualify him as an expert. In fact, I find that his knowledge concerning the estimation of vehicular speed is extremely limited.
The state trooper's testimony, in part, is as follows:
"Q Now, Trooper Green, do you consider yourself to be an expert on speeding vehicles?
"A No, sir.
"....
"Q If a car is moving at the rate of sixty miles an hour do you know how many feet a second that that car is covering?
"....
"A No, sir.
"Q If I told you that that was eighty-eight feet a second, would you disagree with that?
"A I don't know.
"Q Do you know how far eighty-eight feet is?
"A Yes, sir.
"Q Okay. And if a carif a car moves at eighty-eight feet a second if it's traveling sixty miles an hour, do you know how long it would take it to traverse, that is, to cover, six hundred feet?
"A No, sir.
"Q Do you have a judgment?
"A Well, say it's kind of down grade.
"Q You understand how the roadway lays out there from Williams' Small Engine down to in front of Mayes' Grocery, don't you?
"A Yes, sir.
"Q Was thatis that a kind of slight down grade?
"A Yes, sir.
"Q Do you have a judgment as to how many seconds it would take a car to move from Williams' Small Engine down there to the point of impact?
"A I don't know, sir."
Here, as the majority opinion sets out, the state trooper had been on the job only approximately 10 months prior to the accident and had been driving a trooper car by himself for only several months. He testified that as of the date of the accident he had investigated approximately 100 other accidents; however, except for evidence of a 24-week course that all state troopers are required to take, there is no evidence of any specialized training in the area of accident reconstruction or estimation of vehicular speed.
In view of the short amount of time he had served as a state trooper, his limited experience in investigating accidents, and his lack of any formal training in this area, as well as his complete lack of knowledge concerning the estimation of vehicular speed, I conclude that the state trooper was not qualified to testify as an expert concerning the speed of McKelvy's automobile. This is especially true, where, as here, the trooper himself testified that he did not consider himself an expert on vehicular speed. Therefore, I would hold that the trial court abused its discretion in allowing his testimony.
SHORES and ADAMS, JJ., concur.
NOTES
[1] The appellant argues that the word "of" in the stipulation was a result of typographical error and that it should have read "or":

"It should be noted, as set out in the appellee's brief, that the stipulation, as recorded by the court reporter, waived the necessity of objections except `as to the form of leading questions' (emphasis added). Exhibit Record at p. 674. While perhaps it is irrelevant whether the word was `of' or `or', McKelvy contends that the word `of was a typographical error. The word should have been typed as `or,' which is consistent with the general wording of the language, Rule 32(d)(3)(B) of the Alabama Rules of Civil Procedure, typical stipulations made by parties, and the other deposition taken in the case-in-chief. See Exhibit Record at p. 630 (the stipulation page of deposition of Dr. Pate, in which stipulation was `as to form or leading questions.' See also, Glenn v. Vulcan Materials Co., 534 So.2d 598, 601 (Ala.1988) (parties entered into agreement waiving requirement of objections except as to form). It also stands to reason that the intended word was `or,' since the word `of' would make the phrase redundant (i.e., an objection to a leading question is obviously an objection to form). It should also be noted that the letter `f' is directly below the letter `r' on typewriter keyboards."
Appellant's reply brief, at 1.
We note that Glenn v. Vulcan Materials Co. was overruled on other grounds. See Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90, 95 (Ala.1989).
[2] See, also Acklin v. Bramm, 374 So.2d 1348 (Ala.1979); Broughton v. Kilpatrick, 362 So.2d 865 (Ala.1978); and Donaldson v. Buck, 333 So.2d 786 (Ala.1976).

Note that Perry v. Seaboard Coast Line R.R., 527 So.2d 696 (Ala.1988), has been overruled on other grounds. See Tidball v. Orkin Exterminating Co., 583 So.2d 239 (Ala.1991).