IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2002 Session

## MICHAEL JOHN DURANT v. LORRIE DIANE DURANT

**Direct Appeal from the Chancery Court for Montgomery County**
**No. 99-01-0016      Carol A. Catalano, Chancellor**

_____

**No. M2001-00691-COA-R3-CV - Filed April 30, 2002**

_____

This appeal concerns the dissolution of a twelve-year marriage. The trial court granted the husband a divorce on the grounds of inappropriate marital conduct. The court distributed the parties' property and awarded custody of the couple's two minor children to the husband. The court also enforced a contract the parties entered into prior to the divorce wherein the husband agreed to purchase the wife's share of the marital residence. The wife appeals. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Lorrie Diane Durant.

Larry B. Watson, Clarksville, Tennessee, for the appellee, Michael John Durant.

## OPINION

Michael John Durant and Lorrie Diane Durant married in April 1988. Two children were born of the marriage. The first child was born on August 18, 1992, the second child on September 9, 1996. During the marriage, Mr. Durant served in the United States Army. Ms. Durant worked as an elementary school teacher.

After ten years of marriage, the parties separated on December 27, 1998. Subsequently, Mr. Durant filed a complaint for absolute divorce on January 6, 1999. In his complaint, Mr. Durant listed the following grounds for divorce: irreconcilable differences, inappropriate marital conduct and adultery. Soon after, Ms. Durant filed a counter-complaint for divorce on the grounds of irreconcilable differences and inappropriate marital conduct.

While the divorce was pending, Mr. Durant's attorney sent a letter to Ms. Durant's attorney. The letter, dated July 13, 1999, stated that Mr. Durant agreed to purchase Ms. Durant's interest in the couple's marital residence for $40,000. Mr. Durant and Ms. Durant each signed the letter. Alleging that Ms. Durant refused to close the transaction as described in the letter, Mr. Durant filed a complaint for specific performance. This complaint was ultimately consolidated with the parties' action for divorce.

After a lengthy trial, the court granted Mr. Durant a divorce on the grounds that Ms. Durant had engaged in inappropriate marital conduct. The court granted custody of the couple's children to Mr. Durant. The court also found that a binding contract existed between Mr. Durant and Ms. Durant and enforced the contract according to the terms outlined in the letter.

Ms. Durant filed a motion to alter or amend the trial court's judgment. Ms. Durant took issue with the court's decision to grant Mr. Durant the divorce. Ms. Durant also asserted that the evidence preponderated against the award of custody to Mr. Durant. Finally, Ms. Durant contended that the trial court improperly found that an enforceable contract existed between herself and Mr. Durant regarding the sale of the marital residence. The motion was denied.

Ms. Durant appeals the trial court's decision. The issues, as stated by Ms. Durant, are as follows:

I.      The Trial Court erred in not making an equitable property distribution regarding the split of the marital residence.

II.     The Trial Court erred in not awarding Appellant 30% of Appellee's military retirement.

III.    The Trial Court erred in awarding Appellee sole custody of the minor children of this marriage.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *e.g., Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

In Ms. Durant's first issue, she contends that the trial court erred when it determined that an enforceable contract existed between the couple regarding the sale of the marital residence. Instead, Ms. Durant argues that the court should have distributed the equity in the marital residence equitably between the parties. Ms. Durant concedes that there "is no question that at one point [she] agreed to take $40,000.00 as her share of the equity in the house." In light of this fact, Ms. Durant argues

that the court erred by enforcing the contract, maintaining that Mr. Durant made modifications to the contract and that Mr. Durant committed fraud in valuing the marital residence.

Ms. Durant contends that Mr. Durant modified the agreement regarding the sale of the marital residence by "includ[ing] a boat the parties owned as a 'piggy-back' term on the marital residence agreement without ever clearing said new term with [her]." The agreement regarding the marital residence, sent from Mr. Durant's attorney to Ms. Durant's attorney, states as follows:

> It is my understanding that Mrs. Durant has offered to sell any and all interest she may have in and to the parties marital residence for the sum of $40,000.00 and an agreement to hold her harmless from any and all mortgages on said property. Mr. Durant is agreeable to those terms and will pay her the sum of $40,000.00 and agree to hold her harmless. It will require some time for him to secure a loan and we agree to close as soon as possible and Mrs. Durant will be required to execute a waiver of her marital rights to close on his loan.

> Parties shall sign at the bottom to acknowledge the agreement.

> . . . .

> /S/ Michael J. Durant, Accepted

> /S/ Lorrie D. Durant, Accepted

There is no evidence in the record to illustrate that Mr. Durant added the boat as a term to this agreement. The record shows that the Durants agreed to sell the boat. As a result of this transaction, the couple received $1800.00 that represented the equity in the boat. The couple divided these proceeds equally, receiving $900.00 each. There is nothing in the record to suggest that the sale of the boat was somehow connected to the agreement for the sale of the marital residence. Accordingly, the trial court properly determined that Mr. Durant did not modify the terms of the couple's agreement regarding the sale of the house.

Ms. Durant next argues that Mr. Durant committed fraud in offering her $40,000.00 for her share of the marital residence. Ms. Durant contends that Mr. Durant "knew there was a disparity" between the amount of equity actually in the home and the amount he offered her. According to Ms. Durant, her share of the house should have been $70,500.

In order to set aside the contract, Ms. Durant has the burden to establish fraud by clear and convincing evidence. *See Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 530-531 (Tenn. Ct. App. 2001). This Court has stated the elements of fraud as follows:

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him,

there is a positive fraud. The representation must have been made with the knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury.

*Godwin Aircraft, Inc. v. Houston*, 851 S.W.2d 816, 821 (Tenn. Ct. App. 1992) (quoting *Haynes v. Cumberland Builders*, 546 S.W.2d 228 (Tenn. Ct. App. 1976)) (citations omitted).

From our review of the record, we conclude that the trial court properly found that there was no evidence of fraud which would entitle Ms. Durant to rescind the contract. Mr. Durant testified that he based his offer on a recent appraisal of the marital residence, minus the mortgage amount and real estate commissions. Nothing in the record evidences a fraudulent intent on the part of Mr. Durant. Accordingly, Ms. Durant's claims regarding any possible fraud that would entitle her to rescind the contract for the sale of the house are without merit.

In Ms. Durant's second issue, she contends that the trial court erred in making its division of marital property. Other than the marital residence, Ms. Durant's only concern relating to the trial court's division of marital property involves the court's division of the couple's respective retirement benefits. Because Ms. Durant failed to comply with Rule 7 of the Rules of the Court of Appeals of Tennessee, we decline to address this issue.[1] *Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000). While we may suspend the operation of these rules, it must be for good cause. Tenn. Ct. App. R. 7; *Bean*, 40 S.W.3d at 54. No such cause exists in this particular case.

Furthermore, Ms. Durant's brief fails to contain any references to the record concerning the valuation of the marital property. In order to determine whether the court's division of the parties' retirement accounts was proper, this Court would need to examine the entire distribution of the couple's marital property. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). The equity or inequity of a court's distribution of marital property is determined by examining the final results of the court's ruling rather than the division of any particular piece or category of marital property. *Id.* Ms. Durant's brief fails to provide a valuation of the individual items of marital

---

[1]Rule 7 was originally adopted by this Court on March 3, 1992. At that time, however, the rule was designated as Rule 15 of the Rules of the Court of Appeals of Tennessee. Our decision in *Bean* relied upon the appellant's noncompliance with Rule 15. On April 2, 2001, Rule 15 was designated as Rule 7 of the Rules of the Court of Appeals of Tennessee. The language and intent of the rule remain the same. Rule 7 states as follows:

> (a) In domestic relations appeals where the issues involve the amount or the disposition of the marital property, the appellant's brief shall contain in the statement of facts or in an appendix, an orderly tabulation of all marital property in a form substantially like the form attached hereto. All entries in the table as to value and to whom the property was awarded shall be accompanied by a citation to the record where the information may be found.

> (b) If the appeal involves issues about the separate property of either party or the allocation of the marital debts, the appellant's brief shall contain a separate table in the same form showing the pertinent information for that disputed issue.

property or a valuation of the marital property as a whole. We are under no duty to search a voluminous record in order to discern the valuation of the couple's property. *Schoen v. J.C. Bradford & Co.*, 642 S.W.2d 420, 427 (Tenn. Ct. App. 1982). Accordingly, this issue is without merit and is considered waived.

Regarding Ms. Durant's third issue, she contends that the trial court erred in awarding Mr. Durant sole custody of the couple's children. Ms. Durant does not argue that the evidence preponderates against the trial court's finding with respect to its child custody determination. Instead, Ms. Durant maintains that the trial court failed to consider sections 36-6-404 and 36-6-408 of the Tennessee Code when awarding custody. Section 36-6-404 of the Tennessee Code requires that "[a]ny final decree or decree of modification in an action for absolute divorce . . . involving a minor child shall incorporate a permanent parenting plan." Section 36-6-408 of the Tennessee Code requires a parent educational seminar in "an action where a permanent parenting plan is or will be entered." Because there is no permanent parenting plan in this case and due to the fact that neither parent attended a parent educational seminar, Ms. Durant contends that we should remand this case for a consideration of these issues.

The trial court entered its divorce decree, which included the issue of child custody on June 5, 2000. Ms. Durant filed a motion to alter and amend pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure on June 29, 2000. The trial court ultimately heard the motion on January 2, 2001. The provisions of the Tennessee Code which require a permanent parenting plan and a parent education seminar became effective January 1, 2001. Ms. Durant asserts that these provisions apply to her case because the motion to alter and amend was not heard until January 2, 2001 and was not filed until February 16, 2001.

The trial court's order ruling on Ms. Durant's motion to alter and amend states as follows: "The Court finds that there was no evidence introduced for this motion hearing that the court was not already presented during the original divorce hearing, therefore the court refuses to alter or amend the judgment." Ms. Durant acknowledges that she failed to argue this issue at any time before the trial court. It is well-settled that issues not raised at trial cannot be raised for the first time on appeal. *Simpson v. Frontier Community Cr. Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Culp v. Culp*, 917 S.W.2d 233 (Tenn. Ct. App. 1995).

As heretofore stated, Ms. Durant does not argue that the evidence preponderates against the trial court's finding on the issue of custody. Nevertheless, we have carefully reviewed the record with respect to the trial court's award. Having done so, we do not find the evidence to preponderate against the finding of the trial court awarding custody of the parties' minor children to Mr. Durant with visitation with Ms. Durant as set forth in the trial court's decree. Accordingly, we affirm the custody determination of the trial court.

We affirm the decision of the trial court. Costs of this appeal are taxed to the appellant, Lorrie Diane Durant, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE